VAN EPPS v. UNITED BOX BOARD & PAPER CO.

(Circuit Court, N. D. New York. May 18, 1905.)

No. 7,026.

PATENTS—INFRINGEMENT—PULP-SCREENING MACHINE.
    The Victory and Remington patent, No. 417,451, for a pulp-screening machine, was not anticipated by anything in the prior art, and discloses patentable invention. Also *held* infringed.

In Equity. Suit for infringement of letters patent No. 417,451 for a pulp-screening machine, granted to Edmund Victory and Charles R. Remington December 17, 1889. On final hearing.

Risley & Love (E. H. Risley, of counsel), for complainant.

Osgood & Davis (Francis T. Chambers and John C. Pennie, of counsel), for defendant.

RAY, District Judge. This is a suit in equity for an injunction and an accounting, based on the alleged infringement by defendant of what is known as the Victory letters patent, No. 417,451, dated December 17, 1889. The defenses set up and urged are "noninfringement, lack of patentable subject-matter," and "anticipation by prior patents and publications, as set up in the answer." This court has had this patent and its validity under consideration on two former occasions (see Van Epps v. International Paper Co. [C. C.] 124 Fed. 542), and by reason of the insistence of the defend-

ant here and of the large number of pending cases has felt bound to give a most careful and deliberate consideration of the new evidence and of all the questions presented.

The claims of the patent (title not being in dispute) alleged to be infringed are 1 and 2, reading as follows:

"(1) In a pulp-screening machine, the combination of the series of separate screens, 18, the series of independent bellows-plates, 5, having the flexible bellows-joints, 6, at their sides and ends, the drive-shaft, 7, having the eccentrics 8, 9, alternately arranged upon it, and the connecting-frames, 10, substantially as set forth.

"(2) The combination, in a pulp-screening machine, of the body-frame 2, having the parallel cross-bars, 3, the series of independent reciprocating bellows-plates, 5, having the flexible bellows-joint, 6, at their sides and ends, the flexible packing-strips, 13 and 14, extending around the ends and sides of each bellows, and the top, 15, having the series of parallel cross-bars, 17, and the screen-plates, 18, substantially as set forth."

It would not be profitable to give here in detail the contention of the respective parties as to the proper construction of these claims. The machine is for the screening of wood pulp for paper-making— an art, if it may be so called, at the date of the Victory patent in its infancy; not in age, but as compared to its present development. This pulp mixed unevenly with a very large quantity of water when discharged upon is to be run through the screen plates of the machine, and when thus screened is to run into some proper receptacle. It is evident that the wood fiber in the fluid will speedily clog the screen unless some action of the screen, or of some thing or substance coming in contact with the screen, so acts as to keep these fibers from collecting upon the upper side of the screen. This may be done in various ways and by various agencies, but none were ever suggested that seemed practicable and efficient. Resort was had to jarring and shaking the screen plates as we would shake and vibrate the screens in an old-fashioned fanning mill, but this was not practicable. Various machines for doing the work were devised and put in operation, some in this country and some in England and Scotland. Among these we may mention the five closest references which in the opinion of defendant's chief expert negative in whole or in part the alleged novelty embodied in claims 1 and 2 of the Victory patent, viz., Richardson and Glenny British patent, No. 4,669 of 1880; the Engineer No. 1, built under the Miller British patent No. 3,620 of 1880; the Kron United States patent No. 315,420 of 1885; the Russell & Cragin United States patent No. 359,543 of 1887; and the Rogers British patent No. 4,073 of 1887. It will be noted that all of these, except the Russell and Cragin, long antedate the Victory. Hence the Patent Office at Washington must have had them in view when it allowed the Victory. It saw differences and patentable invention in what it did patent, and it certainly patented what is fairly embraced in claims 1 and 2 and the specifications and drawings accompanying. That these claims must be interpreted in view of the original claims made and filed and rejected or amended is conceded. The complainant cannot claim broadly anything that was rejected by the Patent Office, un-

less finally allowed in the same language. But as I read the original claims and those finally allowed in the Victory patent, I find nothing inconsistent with the view that the Victory embraces (claim 1) the following elements in combination: (1) A pulp-screening machine; (2) a series of separate screens, the series of independent bellows-plates having flexible bellows joints at their sides and ends, a drive shaft having the eccentrics alternately arranged upon it, and connecting frames. Also (claim 2), in combination in a pulp screening machine, the body frame (shown in the drawings and specifications) having parallel crossbars, the series of independent reciprocating bellows-plates having the flexible bellows joints at their sides and ends, the flexible packing strips extending around the ends and sides of each bellows, and a series of parallel crossbars at the top, and also screen plates; all "substantially as set forth." These connecting frames are shown in the drawings, and numbered, and the claim refers to them as "the connecting frames 10," and so of other elements mentioned they refer to the figures in the drawings, and the claim ends with these words, "substantially as set forth." I do not understand that the complainant is confined to the forms of construction shown in the drawings. If that be true, then a patentee must be particular to have drawings of every conceivable form of structure, or be particular to mention that the form of construction shown is but one of many. This would only lead to confusion, and in the end to injustice.

In Van Epps v. International Paper Company (C. C.) 124 Fed. 542, which the defendant concedes was correctly decided on the evidence before the court, and in fact says on that evidence could not have been decided otherwise, this court said, in describing the Victory patent: "All the elements form a new and useful combination to produce a new result, where each compartment is sealed so as to obtain alternately an upward pressure of air and a partial vacuum in each compartment." Much time and expense and many pages of record and of argument have been expended in an attempt to satisfy this court that pneumatic action has nothing to do with the clearing of the screen plates, or the forcing or drawing of the mixture to be screened through the plates; that this is done wholly by hydraulic action alone. The case, in the opinion of this court, does not turn upon the correctness or incorrectness of this proposition. There must be air-tight and fluid-tight compartments, one or more, below the screen plates, in which the "bellows plates" operate, excepting, of course, the place through which the screened material flows. If not, then the vertical or up and down movement of the "bellows plates" would effect nothing. But if these compartments connect in a way the one with another, and there is a bellows plate operating in each, the mode of action and effect and the principle is the same, as we are thus far only increasing the size of the compartment. But if we would secure the good effect of having smaller screen plates and compartments corresponding, and several of them (at least more than one), so as to continue the screening operation when there is, for any reason, but a limited

flow of pulp upon the top of the plates, a supply not sufficient to cover a large plate, we must have the compartments below the plates, each, when in operation, sealed in some manner. The Victory patent has sealed each in the manner described in the specifications. It is said that by having partitions reaching to near the bottom they may then communicate with each other below such partitions, and work the same. This is true when the compartments are so deeply filled with material that the openings from the one to the other are closed, sealed, by the fluid contained therein. This is a difference of construction, not of principle, or in mode of operation or results. In such case the compartments are so separately sealed that, if the plate above the one is covered with pulp to be screened, which we may call "stuff," and the other is not, the one covered will continue to operate, while the other will not. The inrush of air through the apertures of the one not covered cannot affect the other, as the air cannot reach this other because of the fluid at the bottom which closes or seals the connection. When nothing but air covers the screen plates the "up and down" motion of the bellows plates effects nothing except to drive the air out of the compartment through the slits or openings in the plates. The up motion expels, the down motion permits a return. The moment "stuff" to be screened is run upon the plates, it will seek the lower level, and pass through the openings into the compartment below; but soon the wood fiber will clog the plates, and then the "stuff" will cease to run through because the openings are obstructed. If now, by raising the bellows plates in the compartment, we force the air out through the slits or openings in the screen plates and into the unscreened pulp on the upper side thereof the obstructions will be displaced and the mere pressure of air upon the "stuff" on the screen plates will press it through into the compartments, or the "stuff" will seek and find the lower level. As the compartments below the screen plates fill with screened material, and before, and even after, the outflow through the flow boxes commences, and the bellows plates rise and fall, the screened material coming through into the compartments will be churned, so to speak, into a foaming, boiling mass containing or made up of air, water, and wood fiber, and this boiling, foaming mass will rise to the screen plates, and some of it will be forced through upwardly with each up stroke or movement and drawn down by suction, or pressed down by the atmospheric pressure, or both, with each down stroke or movement; but as there is in the Victory construction a small space between the upper side of the bellows plates and the screen plates, and very soon the screened material commences its outflow, the material from above the plates is constantly coming through rapidly in quite large quantities as compared with that pressed back in the operation of clearing the plates. Air forced into water, beyond the normal quantity found therein at all times, will release itself, rise to the surface, and in so doing will cause the water to boil and bubble. Pouring water from one receptacle into another carries air into and mixes it with the lower body, and so in the operation of

the Victory machine there is no doubt that air is constantly present in the compartments below the screen plates when in operation. The court can see the boiling agitated mass in the compartments below the plates, and how quickly it settles to a level a little distance below the screen plates the moment the bellows plates cease to move—that is, the moment the cause of the agitation is removed or ceases to act—even when the outflow of screened material is arrested at the same moment the action of the bellows plates ceases. The truth is:

"We try to explain all things by the action of wind and wave. Yet in the air there is a force which is not the wind, and in the waters a force which is not the wave. That force, both in the air and in the water, is effluvium. Air and water are two nearly identical liquid masses entering into the composition of each other by condensation and dilation, so that to breathe is to drink. Effluvium alone is fluid. The wind and the wave are only impulses; effluvium is a current. The wind is visible in clouds; the wave is visible in foam; effluvium is invisible. From time to time, however, it says, 'I am here.' Its 'I am here' is a clap of thunder."

When the bellows plates move downward, the tendency is to create a vacuum, but no vacuum is created because of the immediate downrush or inrush of material from above. That this brings air in greater quantities than is ordinarily mixed with water cannot be successfully questioned. This court is satisfied that no pulp of any amount would be screened in one of these machines if so constructed that the bellows plates rise and fall in a mass of screened material filling the compartments to and necessarily above the screening plates.

It is contended that the Victory patent is but a following of the prior art and contains nothing new or patentable in view of that art. With that contention this court cannot agree. In Van Epps v. International Paper Co., supra, this court considered the Kron patent, No. 315,420, of 1885; two British patents—Miller, No. 3,620 of 1880, and Rogers, No. 4,073 of 1887; and also had before it and considered the Richardson and Glenny British patent No. 4,669 of 1880, and Russell and Cragin United States patent No. 359,543 of 1887. The two last may not have been in evidence, but they were used on the final hearing. It was not, however, seriously claimed that these, or several others in evidence showed anticipation of the claims as finally allowed by the Patent Office. Claims 1 to 4 of the original application read as follows:

"(1) In a paper-screening machine, the combination, with a series of screen plates, of a series of independent bellows working beneath said screens; substantially as set forth.

"(2) In a paper-screening machine, the combination, with a series of screen plates, of a series of alternately reciprocating bellows; substantially as set forth.

"(3) The combination, with the series of screen plates, of the independent bellows, the drive shaft having the series of eccentrics alternately arranged upon it and the connecting frames; substantially as set forth.

"(4) The combination of the body frame having the cross-bars, the reciprocating bellows plates having the bellows joints, the packing around each bellows, and the top having the crossbars and the screen plates; substantially as set forth."

Comparing these with the claims of the patent allowed, already set out, and we find the combinations are different. It is not contended that all the elements of the Victory patent were new, but that the combination was new, and produced a new and useful result; that no such combination of these elements had been made before, and that the results—a vast improvement in the mode of screening and amount of work accomplished—were what had been contended for by many, but not before attained. This court agrees with this contention. That defendant infringes is hardly questioned. Indeed, while it does not copy details, it has taken the gist of the Victory patent and the whole of it. If Victory is not new and useful, it was not worthy of being copied, followed, infringed. It is some evidence of patentable invention in the Victory that it, and not the others, claimed to have anticipated it, has been followed and copied since.

The Victory patent in question is valid, and shows patentable invention and subject-matter; was not anticipated by prior patents or publications; and, fairly construed in view of the action of the Patent Office, has been infringed by the defendant.

A decree accordingly and for an accounting will be entered.