**SUPERIOR SKYLIGHT CO., Inc., v. ZERBE CONST. CO. et al.**

(District Court, E. D. New York. June 2, 1925.)

1. Patents ⊚══26(2)—Though all elements of combination be old, structure may be patentable if combination is new and produces new and useful result.

Though all elements of combination be old, structure may be patentable if combination is new and produces new and useful result.

2. Patents ⊚══168(1)—Argument before Patent Office cannot control or restrict plain language of claim, though it may support it.

Argument made before Patent Office in support of claims cannot control or restrict plain language of claim finally allowed, though, if patent bears on its face particular construction, argument before Patent Office may confirm that construction.

3. Patents ⊚══168(2)—Patentee may not claim anything rejected by Patent Office nor broaden claim by dropping elements which he was compelled to include.

Patentee cannot claim anything which Patent Office rejected, nor can he broaden his claim by dropping those elements which he was compelled to include in order to secure patent.

4. Patents ⊚══328—No. 1,009,502, for skylight having inclined jambs and offsets, held valid but not infringed; "jamb."

Goldman patent, No. 1,009,502, for skylight having inclined jambs and offsets at top with fusible supporting link for automatically releasing, *held* valid, but not infringed; "jamb" meaning a side post or side of a doorway, window, opening, or fire place; a side or vertical piece of any opening or aperture in wall which helps to bear overhead member.

5. Patents ⊚══172—Patents not pioneer patents, but affecting only improvement narrowly interpreted.

Patent which is not a pioneer patent, and claims of which cover mere improvement on prior machines, capable of accomplishing same general result, must receive a narrow interpretation.

6. Patents ⊚══226—Where patent not a pioneer patent, identity of means and operation, combined with identity of result, is essential to infringement.

Where patent is not a pioneer patent, there must be identity of means and identity of operation combined with identity of result to constitute infringement.

7. Patents ⊚══51(1)—That which infringes if later, would anticipate if earlier.

That which infringes if later, would anticipate if earlier.

In Equity. Patent infringement suit by the Superior Skylight Company, Inc., against the Zerbe Construction Company and others. Decree for defendants.

Hauff & Warland, of New York City (William E. Warland, of New York City, of counsel), for plaintiff.

Cox, Kent & Campbell, of New York City (Clarence G. Campbell, of New York City, of counsel), for defendants.

CAMPBELL, District Judge. This is an action in equity brought by the plaintiff to restrain the alleged infringement by the defendants of patent No. 1,009,502, issued by the United States Patent Office to Barney Goldman, and dated November 21, 1911, for skylight; and for the recovery of damages. The defendants have interposed the answer of invalidity and noninfringement.

The patent in suit is described in the specification by the patentee who says, "I * * * have invented new and useful improvements in skylights, of which the following is a specification," and the action is based on all four claims of the patent in suit, which read as follows:

"1. A skylight comprising a frame projecting from the roof of a building and having an opening with an inclined jamb, and provided with an offset at the top of the jamb, a cover pivoted to the lower part of the jamb, means connected to the cover for securing the cover onto the jamb, and means attached to the said connection for automatically releasing the cover to swing downwardly to its open position.

"2. A skylight comprising a frame pro-

jecting from the roof of a building and having an opening with an inclined jamb, and provided with an inclined offset at the top of the jamb, a cover pivoted to the lower part of the jamb, a flexible connection operatively secured to the cover for holding the cover onto the jamb, a fusible link attached to and situated between the end of the connection and the cover for automaticaly releasing the cover to swing downwardly to its open position.

"3. A skylight comprising a frame projecting upwardly from the roof of a building and having a number of openings with inclined jambs, and offset tops located in the sides and ends of the frame, covers pivoted to the lower portions of the jambs, means connected to the covers for securing the covers over the openings and onto the jambs, and means relative to each connection for automatically releasing each cover to swing downwardly to its open position.

"4. A skylight comprising a frame projecting upwardly from the roof of a building and having a number of openings with inclined jambs, and sloping offset tops located in the sides and ends of the frame, covers pivoted to the lower portions of the jambs, a flexible connection operatively secured to each cover and adapted to hold the cover onto the opening, a fusible link attached to and located between the end of each connection and the cover for automatically releasing the cover to swing downwardly to its open position."

Defendants offered in evidence the following patents, all issued by the United States Patent Office, to show the prior state of the art:

No. 83,166, issued to Benjamin Irrgang, for improvement in chimney cowls, dated October 20, 1868, relates to ventilating chimney caps which are provided with hinged doors or flaps, to be opened or closed by the action of the wind.

The control of the movement of the doors beyond a certain point is described in the patent as follows:

"The doors F have a constant tendency by reason of the outward inclination of the sides of the cap, to move outward by their own gravity; and each door is prevented from moving beyond a given limit by a rod, d, whose opposite ends are secured to shields, e e, which project from the sides of the cap, at each side of each door."

No. 209,854, issued to Louis Brecht, for improvement in ventilating greenhouses, dated November 12, 1878, relates to an improved combination of devices for opening or closing a series of greenhouse windows simultaneously and to any desired extent.

No. 600,186, issued to Frank Voigtmann, for fireproof window, dated March 8, 1898, discloses the use of a fusible link in the chain holding open the window which in case of fire will melt causing the window to close.

No. 810,499, issued to Warren R. Shelmire, for transom lifter, dated September 6, 1898, discloses means for drawing downwardly, at the same moment, one or more or all the ventilating sashes in longitudinal alignment with each other, upon the roof of a greenhouse or other building.

No. 835,598, issued to William J. Burton, for metallic window, dated November 13, 1906, discloses a sash that is overbalanced on its pivot and is self-closing, which is held open by a chain or wire cord attached to the upper part of the sash and adequately secured below and in order to close the sash automatically in case of fire, the chain is made in two sections which are joined by a fixture containing a spring which is compressed; the two halves of the fixture being joined together at the meeting edges by a fusible solder which melts under heat, and by the force of the compressed spring the two parts of the fixture are forced apart.

No. 950,839, issued to Everett D. Chadwick, for ventilator, dated March 1, 1910, discloses outwardly opening window which is held closed with a chain or cord made in two halves which are joined together with a fusible link, which in case of fire will melt and the window will close.

No. 1,025,957, issued to William Bayley, for lantern windows and their operating mechanism, dated May 14, 1912. The application for this patent was copending with the patent in suit, and though issued earlier cannot be considered as prior art.

The defendants also offered in evidence a paper by Mr. John R. Freeman, entitled "The Safeguarding of Life in Theaters," presented in New York at the meeting of the American Society of Mechanical Engineers, in December, 1905, and forming part of volume 27 of the transactions. This paper was the result of investigations made by the author after the great loss of life in the Iroquois Theater fire in Chicago. On page 96, Fig. 7, are shown auxiliary smoke vents in wall above gridiron. These openings have sashes hinged at the bottom and are set in vertical jambs with stop members at the top, and would normally drop open outwardly were they not held closed by a cord or chain secured to the top of the sash by a fusible

link and secured below, which fusible link in case of fire would melt and the sash would drop outward, opening the whole space of the window and permitting the escape of gas and smoke.

And the defendant also offered in evidence to show prior use an oral description, photograph, and a model of the skylight which was designed by H. A. Daniel, president of the Atlas Roofing Company by whom this action was defended, who was then the manager of the roofing and sheet metal work of Henry E. Wieber, which was erected on the roof of the Kingston Opera House, Kingston, N. Y., in 1906, the sashes of which were set in vertical jambs with slanting stops; the sash being so pivoted that they would normally drop open inwardly were they not held closed by a chain or cord in which was mounted a fusible link, which in case of fire would melt and allow the sash to drop open.

Plaintiff contends that the proof offered by the defendants as to the construction of said skylight was not sufficient to warrant its consideration, but with this contention I am not in accord because to my mind the proof is convincing.

The principle involved in the operation of that skylight is the same as that involved in the skylight erected at the Rockville Center High School, of which complaint is made in this action. On the Rockville Center High School the sash is held in a slanting position in vertical jambs with slanting stops, by a cord or chain in which is mounted a fusible link which holds the sash closed; the only difference being that the sash in the Kingston Opera House skylight was pivoted part way of the sash and the sash swung inwardly; whereas, the sash at the Rockville Center High School is hinged at the bottom and swings outwardly.

The prior art also contained the two patents issued by the United States Patent Office which were cited as references by the Patent Office on the rejection of the claims first filed by the patentee herein.

No. 609,278, issued to William Kane, for automatic flue-opening device, dated August 16, 1898, discloses a series of inclined sashes opening into flues which fall outward by their own weight. These sashes are held closed by fusible holders which are so constructed as to release the sash when a certain heat is reached.

No. 792,902, issued to William. J. Kelly, for roof ventilator for buildings, dated June 20, 1905, discloses covers and a fusible link as means to automatically open said covers.

It thus appears that all the elements of the patent in suit, with the exception of the offset at the top or sides of the jamb and the possible exception of an inclined jamb, were old and well known to the art.

[1] Even if all the elements of a combination may be old, the structure may be patentable if the combination is new and produces a new and useful result. Diamond Rubber Co. v. Consol. Tire Co., 220 U. S. 428, 31 S. Ct. 444, 55 L. Ed. 527. I do not find, however, that all of the elements of the patent in suit, as I construe that patent, are found combined in any of the prior art, and therefore I do not find that there was any anticipation. Eastern Dynamite Co. v. Keystone Powder Mfg. Co. (C. C.) 164 F. 47.

The defendants offered in evidence the file wrapper and contents of the patent in suit, and from it we find that in his application the patentee first presented five claims, which read as follows:

"1. A skylight comprising a frame having an aperture located in the side of the frame, a cover pivoted at the lower portion of the aperture and adapted to set at an angle with the top as a stop.

"2. A skylight comprising a frame having an aperture with an offset top located in the side of the frame, a cover pivoted at the lower portion of the aperture and adapted to set at an angle with the top as a stop.

"3. A skylight comprising a frame having a number of apertures located in the sides of the frame with offset tops, covers pivoted to the lower portions of the apertures and adapted to set at an angle with the tops as stops.

"4. A skylight comprising a frame having a number of apertures located in the sides and ends of the frame with offset tops, covers pivoted to the lower portion of the apertures and adapted to set at an angle with the tops as stops.

"5. A skylight comprising a frame having a number of apertures located in the sides and ends of the frame with offset tops, covers pivoted to the lower portions of the apertures and adapted to set at an angle with the tops as stops, flexible connections operatively attached to the cover, and a fusible link secured to the connection."

All of these claims provided, among other elements, either for a cover or for covers pivoted at or to the lower portion or portions of the aperture or apertures and adapted to set at an angle with the top or tops as a stop or stops; and the fifth claim provided for flexible connections operatively attached to the cover, and a fusible link secured to the connection.

All of the five claims were rejected by the examiner, who cited the following references:

Kane, 609,278, August 16, 1898, 98–27.

Kelly, 792,902, June 20, 1905, 98–27.

Claims 1–4, inclusive, were rejected on Kane.

Claim 5 was rejected on Kane in view of Kelly, since it would not involve invention to use the cords and fusible link of Kelly in Kane's device.

This decision was accepted by the patentee, who amended by canceling said claims and filing new claims, which were again rejected, and the patentee filed still further amendments, after which the claims as finally amended were allowed as they are now found in the patent in suit.

Each of the first two claims as finally allowed provides for "an opening with an inclined jamb, and provided with an offset at the top of the jamb," and each of the two last claims provides for "a number of openings with inclined jambs, and offset tops located in the sides and ends of the frame."

The patentee's attorney called the attention of the Patent Office to these elements in the explanation accompanying the last amendments, and said:

"Applicant's invention consists in the novel method of positioning the covers onto the inclined jambs of a skylight frame projecting from the roof of a building. The peculiar way of arranging the inclined jambs with offset sloping tops whereby the cover when in place over the opening in conjunction with the jamb forms a water-tight closure. It is obvious that it required some inventive skill to construct the jamb frames as illustrated and claimed and not shown in any of the patents cited."

[2, 3] Of course, the argument made before the Patent Office could not control or restrict the plain language of the claim finally allowed (A. G. Spalding & Bros. v. John Wanamaker, 256 F. 530, 167 C. C. A. 602); but plaintiff cannot now claim anything which the Patent Office rejected (Van Epps v. United Box Board & Paper Co., 137 F. 418, 75 C. C. A. 77). If, however, the patent bears on its face a particular construction, the argument made before the Patent Office may confirm that construction. Goodyear Dental Vulcanite Co. v. Davis, 102 U. S. 227, 26 L. Ed. 149.

In my opinion the invention of the patentee in the patent in suit consists in the novel method of positioning the covers onto the inclined jambs and the offsets from the jambs, which prevented ice and snow from accumulating in the jambs outside of the sash, and thus prevented it from automatically opening, which was not and cannot as surely be accomplished when the sash is inset in the jambs at the bottom and slanted outwardly at the top as was shown in the prior art; and on that the patent may be held valid over the prior art. It is clear to me that the broader claim which would have covered apertures or windows with vertical jambs was rejected, and that in order to obtain the patent plaintiff acquiesced in that restriction.

The patentee first made broad claims in his application filed with the Patent Office, and on their rejection he limited them by inserting as two essential elements in the claims in his application "inclined jambs" and "offsets" in order to distinguish the patent in suit from the prior art, and he cannot now broaden his claim by dropping those elements he was compelled to include in order to secure his patent. Shepard v. Carrigan, 116 U. S. 593, 6 S. Ct. 493, 29 L. Ed. 723.

Each of the claims of the patent in suit being limited as to one of its elements to an "inclined jamb," it becomes necessary to define that element.

The definition of "jamb," as given in the Standard Dictionary, Unabridged, is: "A side post or side of a doorway, window opening or fire place." And as given in the Century Dictionary is: "A side or vertical piece of any opening or aperture in a wall, such as a door, window or chimney, which helps to bear the lintel or other member overhead serving to sustain or discharge the superincumbent weight of the wall."

It therefore seems to me that the claims of the patent in suit must be construed as covering only a skylight with an opening or openings, having inclined jambs, as "jambs" have been hereinbefore defined, and offsets.

Plaintiff offered in evidence a number of final decrees in actions brought on this patent, but they were consent decrees, and the most that could be claimed for them, it seems to me, would be acquiescence in the validity of the patent.

The only reported case on this patent was Superior Skylight Co., Inc., v. August Kuhnla, Inc., 265 F. 282, in which a decision was rendered by Judge Garvin, in the District Court, dismissing the bill for noninfringement, in which opinion, at page 285, he said:

"The Goldman patent, upon which plaintiff sues, and which it is claimed the defendants have infringed, is not a pioneer patent.

The claims of the patent include a construction which involves an inclined jamb. Originally five claims were presented, which were rejected. The applicant then made an amendment canceling all the five original claims, and substituted four, by which he limited each claim to the feature of an inclined jamb. It seems to me that, by this acquiescence in the rejection, the applicant limited the construction of his claims to a jamb set at a distinct incline."

The decree of the District Court in Superior Skylight Co., Inc. v. August Kuhnla, Inc., supra, was affirmed by the Circuit Court of Appeals of this circuit, in an opinion by Circuit Judge Manton (273 F. 482), who, at page 484, said:

"When application was made by the appellant for a patent originally, five claims were presented. Not any of these claims were limited to a structure wherein the opening was provided with vertical or inclined jambs, and, when the claims were allowed, it was for an inclined jamb. Further, by his second amendment the applicant limited four of his claims for a frame projecting from the roof of the building. We must therefore consider the patent within the scope of its claim as allowed by the Patent Office. Minerals Separation Co. v. Butte Mining Co., 250 U. S. 336, 39 S. Ct. 496, 63 L. Ed. 1019. For when an applicant for a patent to cover a new combination is compelled by rejection or submission to narrow his claim by the introduction of a new element, he cannot, after the issue of the patent, broaden his claim by dropping the element which he was compelled to include in order to secure his patent. Shepard v. Carrigan, 116 U. S. 593, 6 S. Ct. 493, 29 L. Ed. 723."

There was no express holding either in the District or Circuit Courts in that case sustaining the validity of the patent, but I assume that they treated it as valid or they would not have devoted the attention that they did to the subject of infringement.

The device in that case was radically different in construction and operation from that which is alleged to infringe in the instant suit, but it is to be noted that the courts fully discussed the element of the patent in suit, an "inclined jamb."

[4] In the skylight of the Rockville Center High School, which is the alleged infringing structure, there are no inclined jambs to the openings, but the jambs are vertical, and the sashes are hinged at the bottom and held in a slanting position against slanting stops by a cord or chain in two parts joined together by a fusible link. Furthermore, there are no offsets to the top or sides of the jambs as described in the patent in suit. These elements of the claims being omitted, there can be no infringement. Cimiotti Unhairing Co. v. Am. Fur Ref. Co., 198 U. S. 399, 25 S. Ct. 697, 49 L. Ed. 1100.

Plaintiff contends that the slanting stops are the equivalent of the slanting jambs, but I cannot agree with this contention, in the face of the prior art, especially the Freeman Publication and Kingston Opera House installation.

[5] The patent in suit is not a pioneer patent, but the claims cover a mere improvement upon prior machines which were capable of accomplishing the same general result, and must receive a narrow interpretation. Greene v. Buckley, 135 F. 520, 68 C. C. A. 70.

[6] In view of the prior state of the art and the proceedings in the Patent Office, the patent is not a pioneer patent, and there must therefore be identity of means and identity of operation combined with identity of result to constitute infringement. Kokomo Fence Machine Co. v. Kitselman, 189 U. S. 8, 23 S. Ct. 521, 47 L. Ed. 689.

The defendants in constructing the skylight, in my opinion, did not copy the patent in suit, but closely followed the prior art; it being in substance identical with the disclosures of the Freeman Publication and in principle the same as the Kingston Opera House installation; and if the skylight of the Rockville Center High School infringes any claim of the patent in suit, then the window disclosed in the Freeman Publication and the skylight installed at the Kingston Opera House, if later, would also infringe the patent in suit.

[7] That which infringes if later, would anticipate if earlier. Knapp v. Morss, 150 U. S. 221, 14 S. Ct. 81, 37 L. Ed. 1059; Miller v. Eagle Manufacturing Co., 151 U. S. 186, 14 S. Ct. 310, 38 L. Ed. 121.

As I have construed the patent in suit, however, two of the essential elements of each of its claims, "inclined jambs" and "offsets" to the tops or sides of the jambs, which constituted invention, are not found in the disclosure of the Freeman Publication or the installation of the skylight on the Kingston Opera House; therefore they do not anticipate the patent in suit, and as the same elements are not found in the Rockville Center High School skylight, it does not infringe.

The patent, limited as I have construed it, is valid, but not infringed.

A decree may be entered in favor of the defendants dismissing the bill of complaint, with costs.