## TRUSSELL MFG. CO. v. S. E. & M. VERNON, Inc.

(District Court, E. D. New York. February 11, 1926.)

No. 2037.

1. **Patents ☞328—No. 880,053, for metallic plates to open mating prongs in temporary binders, held valid and infringed.**

Trussell patent, 880,053, claim 4, for metallic plates to open mating prongs in temporary binders, *held* valid and infringed, though infringer used fibre board plates.

2. **Patents ☞328—No. 1,104,394, for binder of single-ply leather, held not infringed by fabrikoid binder.**

Trussell patent, 1,104,394, claims 1, 2, 3, 4, for temporary binder of single-ply integral piece of flexible material or leather, *held* not infringed by binder of fabrikoid, an imitation leather.

3. **Patents ☞168(2).**

Plaintiff in infringement suit cannot broaden claims, to include claim rejected by Patent Office.

4. **Patents ☞170.**

Limitation voluntarily made by patentee, though required by prior art, is binding on plaintiff in infringement suit.

5. **Patents ☞325.**

In suit for infringement of two patents, where plaintiff prevailed as to one only, neither party is allowed costs.

In Equity. Patent infringement suit by the Trussell Manufacturing Company against S. E. & M. Vernon, Inc. Decree for plaintiff on one patent, and for defendant on the other.

Fraser, Myers & Manley, of New York City (Arthur C. Fraser and Louis E. Giles, both of New York City, of counsel), for plaintiff.

Fritz Ziegler, Jr., of New York City, for defendant.

CAMPBELL, District Judge. Plaintiff brings this suit in equity against the defendant alleging infringement of letters patent No. 880,053, for improvement in temporary binders, and No. 1,104,394, for temporary binder, issued February 25, 1908, and July 21, 1914, respectively, to Clarence D. Trussell, assignor to Trussell Manufacturing Company. The defendant challenges the validity of both patents and denies infringement. I will consider them in the order named.

[1] Patent No. 880,053 has expired, and only claim 4 of the patent is in suit. It reads as follows:

"4. In a temporary binder, mating prongs; means to retain said prongs in open

11 F.(2d)—19

or closed position; and apertured metallic plates engaged by said prongs and adapted to open the prongs when pressed backward by the operator."

The object of the patent is stated by the patentee in his application as follows:

"The object of my invention is to provide a binder of simple and cheap construction, which may be readily operated for the insertion or withdrawal of sheets."

The metallic plates are placed between the covers of the binder and the inclosed sheets, and by bending backwardly the plates with the covers they serve as levers, and cause the prongs, which are held by means of a yieldable nature, to open.

The defendant offered in evidence six United States patents of the prior art:

No. 453,574, to Blincoe, for temporary binder, dated June 2, 1891.

No. 580,362, to Barrett, for binder, dated April 13, 1897.

No. 644,345, to Wiley, for letter file, dated February 27, 1900.

No. 712,077, to Krag, for temporary binder, dated October 28, 1902.

No. 791,296, to Shepherd, for temporary binder, dated May 30, 1905.

No. 841,125, to Dawson, for loose-leaf binder, dated January 15, 1907.

None of the first four require further consideration, because in none of them are disclosed apertured plates adapted to open mating prongs, and none of them have means for retaining such prongs in open or closed position of a character adapted to co-operate with apertured opening plates. The last two, however, require more detailed consideration.

Patent No. 791,296, to Shepherd, discloses a binder having covers *17*, *18*, hinged to a pair of back plates *2*, *3*, carrying the sheet-holding prongs *11*, *12*. These back plates are normally held rigidly closed, as indicated in Fig. 1, by means of a latch *5*, shown in Fig. 5. The plates *2* and *3* are hinged together, so that when not prevented by the latch *5* they may be turned back as indicated in Figs. 2 and 3, to permit the sheet-holding prongs or fingers to be separated. The forward surface of the part *6* of the latch is beveled at *9*, so as to ride under the hook *10* of the part *7*, and permit the two parts to be snapped together, thereby rigidly holding the back plates in a position such as to maintain the ends of the sheet-holding fingers in contact, as indicated in Fig. 1. Included in the Shepherd device is a pair of guide plates *14*, the purpose of which is described in the specification as follows:

"The guides *14* are made broad enough to

extend over the part of the cover which is flexed when the binder is opened or closed."

"The plates 14 when the cover is partially open, as shown at the left in Fig. 2, rest against the back and cover and extend diagonally between them. This raises the pages 16 on the fingers until they assume their proper position when the book is closed. Should these plates be omitted, the pages would not be raised from the plate or back 1 and would bind between the fingers and the cover when the book was being closed, thereby tearing the pages and breaking the binder."

The specifications say nothing about the plates 14 playing any part in opening the fingers 11, 12, but that would not detract from the effect of this patent as an anticipation, if the plates were adapted for that purpose. The opinion of the defendant's expert that the stubs of plaintiff's patented device and the device disclosed by Shepherd are alike in function and operation is not convincing, in the face of the testimony of the plaintiff's president, who has had 23 years' experience as a manufacturer of temporary binders, because I am convinced that it would not be practical to open the fingers 11, 12, of the device disclosed by the Shepherd patent by the use of the guide plates 14, in view of the resistance which would be offered by the latch 5.

No mention is made in the specifications of the manner in which the two parts of the latch 5 may be released, and the manner of separating the sheet-holding fingers does not appear to have constituted any part of the invention; neither does the device include any means whatever for maintaining the prongs in open position. The plates 14 of the Shepherd patent could not satisfactorily be substituted for the opening plates 20 of the patent in suit, particularly because the elongated holes or slots 15 in the guide plates 14 are not such as would be used in opening plates 20 of the patent in suit.

Patent No. 841,125, to Dawson, also discloses a binder having perforated follower plates 17, 18, and the purpose of the invention is described in the specification as follows:

"The invention relates directly to the stiff fly sheet or follower used in devices of this kind for facilitating the movement of the leaves upon the arches as the book is closed, its object being to provide a fly or follower in a book of this character which will slide freely on the arches and will prevent the mutilation of the sheets."

The plates 17, 18, are each provided with oblong apertures for receiving the arches, as shown at 20, 21, and plates 17, 18, are each made of two thicknesses bound together by rivets. Dawson evidently did not contemplate using the followers 17, 18, as opening plates for the sheet-holding arches, nor does the specification show in what manner the sheet-holding arches are to be opened, nor any means whereby they may be maintained in either an open or closed position, and these features constituted no part of the Dawson invention.

The defendant's expert expressed the opinion that the followers 17, 18, of the Dawson structure, and the plates 20 of the patent in suit, are the same in function and mode of operation, but I am unable to agree with him because I believe the plaintiff's president has had much greater experience in the manufacture of temporary binders and familiarity with the temporary binder art, and I agree with him that the structure indicated at the end of the binder back illustrated in the center of Fig. 3 shows that a key was intended to be used to turn the rod which opened the rings.

While this part of the mechanism is illustrated, but not described, still I think more weight should be accorded to the testimony of the president of the plaintiff, with his long experience, than to the testimony of the defendant's expert, who has no such familiarity with the art. In my opinion the patents cited do not anticipate the patent in suit.

The temporary binder manufactured by the defendant is shown by the specimen, Exhibit 4, and its manufacture within 6 years prior to the filing of the bill of complaint is admitted. Exhibit 4 clearly infringed the patent in suit unless such infringement be avoided by the mere change of material of which the opening plates are constructed. Claim 4 of the patent is for "metallic plates" while the defendant uses fiber board.

Defendant contends that the word "metallic" clearly limits the claim, and points to what it contends was the examiner's understanding of the invention when in the file wrapper he said: "The features of novelty appear to reside in a pair of metallic fly leaves, and in the combination of such leaves with the other elements." And also points to a later patent issued to plaintiff in which are claimed stubs, which in the specification are described as being made of "small light stiff material."

The answer, however, would appear to be that the word "metallic" does not necessarily mean constructed of metal, but, as stated in

the Century Dictionary: "Consisting of or having the characters of a metal. * * * Having one or more properties resembling those of metals." The fiber board plates employed by the defendant have a sufficient degree of rigidity, which is one of the properties or characteristics of metals, to practically serve the purpose of opening the binder prongs.

In my opinion they are the mechanical equivalents of the opening plates of the patent in suit as they perform the same identical function in exactly the same manner. I therefore find that patent No. 880,053 is valid and infringed.

[2] Patent No. 1,104,394 is still in force, and claims 1, 2, 3, and 4 of the patent are in suit and read as follows:

"1. A temporary binder including in combination a back and covers composed of a single-ply integral piece of flexible material, a loose-leaf binding mechanism, and means passing through said back and fastening said mechanism permanently upon the inner face thereof.

"2. A temporary binder including in combination a back and covers composed of a single-ply integral piece of leather, so that the cut edges of said piece of leather constitute the edges of the covers and back, a loose-leaf binding mechanism, and means passing through said back and fastening said mechanism permanently upon the inner face thereof.

"3. A temporary binder including in combination a back and covers composed of a single-ply integral piece of flexible material, a loose-leaf binding mechanism on the inner side of said back, a binding plate on the outer side of said back and means for clamping said back between said mechanism and said plate.

"4. A temporary binder including in combination a back and covers composed of a single-ply integral piece of flexible material, a loose-leaf binding mechanism on the inner side of said back and a binding plate on the outer side of said back having ears passing through said back and engaging a part of said mechanism so as to fasten the latter to said back."

The invention as defined by claim 1 comprises a temporary binder having a back and covers composed of a single-ply integral piece of flexible material and a loose-leaf binding mechanism secured permanently to the inner face of said back by means passing through the same. The invention as defined by claim 2 is further limited to a back and covers of leather, as distinguished from flexible material. As defined by claim 3 the invention of claim 1 is further limited to one having fastening means comprising a binding plate and means for clamping the back between said plate and the loose-leaf binding mechanism. As defined by claim 4, the invention of claim 3 is further limited, in that the fastening means is described as comprising a plate having ears passing through the back of the binder and engaging a part of the loose-leaf mechanism, so as to fasten the same to the back.

It thus appears that all of these claims are combination claims, and that one element of each of the claims 1, 3, and 4 is a single-ply integral piece of flexible material, and of claim 2 a single-ply integral piece of leather. Plaintiff offered Exhibits 15 and 18 as exemplifying the invention of the patent in suit. Exhibit 15 has a cover of pigskin, and Exhibit 18 has a cover of fabrikoid or artificial leather.

The alleged infringing article is Exhibit 4, which is admittedly manufactured by defendant. The cover of this binder is also constructed of fabrikoid or artificial leather, and differs from the cover of Exhibit 18, in that it is of lighter and thinner material. The invention does not reside in the cover alone, but it is an important element of each of the claims, and if the defendant does not employ a single-ply integral piece of leather or flexible material, then defendant does not infringe.

The defendant offered in evidence many patents of the prior art, an examination of which shows that the art was a crowded one, leaving but little room for invention, or, as the Assistant Commissioner of Patents said, in reversing the Board of Examiners in Chief: "The art is well worked up, and small changes are all that is left for inventors to make."

Among the patents cited the following only require any special attention:

No. 389,896, to Noel & Maurer, for binding clamp for receipt books, dated September 25, 1888, has a back and covers composed of a single piece of leather.

No. 444,376, to Closs, for book cover, dated January 6, 1891, has the binder mechanism fastened to the back of a built-up cover with eyelets.

No. 463,323, to Vernon, for temporary binder, dated November 17, 1891, has a built-up cover.

No. 722,870, to Montague, for temporary binder, dated March 17, 1903, has a back and covers composed of a single piece of flexible material.

No. 806,913, to Pitt, for loose-leaf book, dated December 12, 1905, has a leather cover.

No. 812,121, to Edwards, for temporary binder, dated February 6, 1906, has the binder mechanism fastened to the back of a built-up cover.

No. 814,492, to Wheildon, for loose-leaf binder, dated March 6, 1906, shows the binder mechanism attached to the cover by prongs *63*.

No. 849,973, to Buchan, for loose-leaf binder, dated April 9, 1907, shows a built-up cover with a binder mechanism attached thereto.

No. 934,430, to Dawson, for loose-leaf binder, dated September 21, 1909, has the binder mechanism attached to the built-up cover.

The file wrapper and contents of the patent in suit shows that its passage through the Patent Office was anything but a smooth one, rejected as were claims 1 and 2 by the examiner, his action was affirmed on appeal by the Board of Examiners in Chief, and their decision was reversed by the Assistant Commissioner.

[3] Whatever presumption there may be of novelty and invention, due to the issuance of the patent in suit, the record clearly shows that the original claims for a "one-piece flexible member constituting the back and covers" were rejected, and that the patentee acquiesced in such rejection, erased such claims, and amended by claiming "a single-ply integral piece of flexible material," in claims 1, 3 and 4, and "a single-ply integral piece of leather" in claim 2, and that with such claims the patent issued, and plaintiff cannot now broaden its claims to include that which was rejected. Van Epps v. United Box Board & Paper Co. (C. C.) 137 F. 418 at page 419.

[4] This limitation was rendered necessary by the prior art, but it would still bind the plaintiff, if it was voluntary on the part of the patentee. Royer v. Coupe, 13 S. Ct. 166, 146 U. S. 524, 532, 36 L. Ed. 1073; Merrill v. Yeomans, 94 U. S. 568, 24 L. Ed. 235; Fulton Co. v. Powers Regulator Co. (C. C. A.) 263 F. 578, 582. Plaintiff, therefore, cannot claim a one-piece flexible member, but is limited to a single-ply integral piece of flexible material or leather. The material used by both the plaintiff on Exhibit 18 and the defendant on Exhibit 4 is fabrikoid, an imitation leather manufactured by the Dupont Company.

Claim .2 of the patent in suit is limited to a single-ply integral piece of leather, and whatever may be urged in support of the contention that fabrikoid is a one-ply material, it certainly is not leather, nor is it made leather by calling it "imitation leather."

The manufacture of the material of which Exhibit 18 was constructed was described by plaintiff's witness Fitzpatrick, a special representative of the Dupont Company, as follows: "There is a piece of cotton fabric, woven fabric, on which are deposited layers of pyroxylin, which is deposited in a liquid form, which dries over steam coils, something like on this particular piece of material. There would be 30 or 40 coats of this coating, depending on the finish we wanted, and the pliability. It is coated on one side first, then on the other side, then embossed on the face side, and then the coating on the back side is finished."

While this witness said that this was essentially a one-ply material, and that they made two, three, and four ply material differing in the number of different plies of textile in each piece of material, he also identified the cover of Exhibit 4 as artificial leather which looked like a product of his company and a one-ply material.

Another representative of the same company subsequently identified the cover of Exhibit 4 as being fabrikoid, a product of the Dupont Company. Fitzpatrick further says that unfortunately it was possible to separate the coating from the fabric in some cases.

There is quite a wide difference of opinion among the witnesses as to whether the material fabrikoid, used by the defendant in Exhibit 4, is single-ply material, but it seems to me that a consideration of the form of cover over which the patent in suit is claimed to be an invention will be most helpful. Practically all such covers in use before the date of the alleged invention of the patent in suit were composed of three plies, an outer ply of thin leather or other material, lining of cloth or paper, and an intermediate board. The purpose of the inner lining was to improve the appearance of the book by covering a rough surface.

Exhibit M, which consists of an outer ply of paper designed to imitate leather, an inner ply of paper designed to improve the appearance of the book, and a center ply of fabric, is admitted by the plaintiff's witness Trussell to be a three-ply material.

Defendant's Exhibit A, which is a binder made of fabrikoid, clearly shows that the witness Fitzpatrick was right, and that unfortunately the outer ply of material can be detached from the fabric, and likewise the

inner ply. The inner ply is used to improve the appearance of the plaintiff's binder by covering a rough surface.

This was exactly the purpose of covering the inner portion of the prior art binders, and the purpose of the outer ply is to give the books the appearance of being covered with leather, the same as in the prior art binders. That the purpose of placing the inner ply on the binder of the patent in suit was to improve the appearance of the binder is apparent.

This also appears from the fact that Exhibit C shows fabrikoid which has not had the inner side of the fabric coated, and therefore consisted of two plies, but leaves the inside with an unfinished appearance. There is a difference in the method used in making the former built-up covers and in making fabrikoid, but in each instance the outer and inner faces of the covers were caused to adhere to the intermediate board or fabric, but the purpose was the same.

Much was said upon the trial about the fabric in fabrikoid being impregnated with the pyroxylin, but the fact seems to be, as shown by Exhibit A, that the pyroxylin in a liquid form is deposited upon the fabric, coat after coat, and then embossed to represent leather, after which the coating on the inner side is finished. That it is possible to separate the layers of fabrikoid is shown by Exhibit A, and, when so split, you clearly have not a single ply, but three distinct plies, the first of pyroxylin, the second of fabric, and the third of pyroxylin. That separating such layers may be difficult does not seem to me to change the character of the article from three to one ply, because undoubtedly it would have been quite difficult, without destroying them, to have separated the plies of the built-up covers of the prior art.

The patent in suit is closely limited both by the prior art and the action of the Patent Office, and while it is undoubtedly entitled to a limited range of equivalents, it cannot by the application of the doctrine of equivalents be broadened to cover that which the Patent Office rejected, a "one-piece flexible member constituting the back and covers." I am unable to find in the alleged infringing structure of the defendant the essential element of "a single-ply integral piece of flexible material," or "a single-ply integral piece of leather," and, as the claims of Patent No. 1,104,394 in suit are for a combination, the defendant has not infringed.

A decree may be entered in favor of the plaintiff and against the defendant on patent No. 880,053, as prayed for in the bill of complaint, with the usual order of reference, and in favor of the defendant against the plaintiff on patent No. 1,104,394, dismissing the bill of complaint.

[5] As both parties have won and lost, the decree will be without costs to either party.

Settle decree on notice.